# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2788

_____

| | | |
|---|---|---|
| Jesse Lyles, Shelba Lyles, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| City of Barling; Matthew LaMora, | * | |
| in his individual and official | * | |
| capacities ;Larry Merrill, Corporal, | * | |
| in his individual and official | * | |
| capacities; James Hamilton, | * | |
| Captain , in his individual and | * | |
| official capacities; Myron LaMora, | * | |
| Chief , in his individual and official | * | |
| capacities, | * | |
| | * | |
| Appellants. | | |

_____

Submitted: January 13, 1999
Filed:  June 28, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Jesse and Shelba Lyles brought this 42 U.S.C. § 1983 suit, claiming that the individual defendants, all law enforcement officers for the city of Barling, Arkansas,

violated their Fourth Amendment rights during a search of the Lyles' home. Officer Matthew LaMora, Corporal Larry Merrill, Captain James Hamilton, and Chief Myron LaMora sought summary judgment on the basis of qualified immunity. The district court[1] denied the law enforcement officers' motion, and they now appeal. We affirm.

## I.

On January 3, 1997, law enforcement officers entered and searched the home of Jesse and Shelba Lyles in an attempt to execute a state court order calling for Jesse Lyles' arrest. The state court order, signed October 10, 1996, found Lyles in willful contempt of court for his failure to pay prior child support orders and sentenced him to 60 days of incarceration. The order specifically directed law enforcement authorities to arrest Lyles and place him in the county detention center. (Appellants' App. at 36.) Although many facts are in dispute, the evidence demonstrates that the individually named officers, along with officer Brian Hodges, who is not a named defendant in this suit, attempted to execute the arrest warrant. In so doing, they forcibly entered and searched the Lyles' residence.[2]

Subsequently, Jesse and Shelba brought this suit pursuant to 42 U.S.C. § 1983, contending that the city and its law enforcement officers violated their Fourth Amendment constitutional rights to be free from unreasonable searches and from the deprivation of property without due process of law. The defendant law enforcement

---

[1] The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

[2] Although it is not essential to the outcome of this appeal, we note that when law enforcement officers searched the Lyles' residence looking for Jesse Lyles on January 3, 1997, Jesse and Shelba Lyles were not home because they had traveled to Jonesboro to contest the order calling for Jesse's arrest. Ultimately, their challenge was successful, and the state court recalled the order on January 6, 1997.

officers sought summary judgment, asserting that they are entitled to qualified immunity for their actions. The district court denied their motion for summary judgment, noting that the conflicting evidence made it impossible to determine with certainty what information was within the officers' knowledge at the time of their actions. See, e.g., Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998) (holding that contradictory evidence regarding the officers' knowledge about an affiant's reliability precluded summary judgment based on qualified immunity).

Specifically, the Lyles' evidence includes the affidavit of Officer Brian Hodges, who is not a defendant and no longer works for the city of Barling. He stated that Officer Matthew LaMora was the first to arrive at the Lyles' trailer home. Officer Hodges, Corporal Merrill, and Captain Hamilton responded to the call, each arriving separately. Hodges asserts that LaMora said that he (LaMora) believed Lyles was in the trailer, though he had not seen him. Hodges said that he spoke with a neighbor named Martha who said she did not know whether Lyles was home, but that she had called the police department after she noticed that Lyles' truck was parked outside the trailer. Martha also told Hodges that a small red car that often parked beside the trailer had recently left, and Hodges said he reported this information to the other officers.

According to Hodges, the officers forcibly entered the trailer after Captain Hamilton radioed Chief LaMora for permission to enter the trailer forcibly. Hodges said it did not appear that anyone was home. The master bedroom was neat, the bed was made, and the drawers were closed. Hodges looked through the room in places where a person could hide but found no one and left the room intact. Hodges observed Captain Hamilton going through mail on the desk and Officer LaMora going through papers on a shelf. Later, Officer LaMora also went through the master bedroom. Hodges stated that after LaMora's search, the bed sheets were pulled out, clothes were hanging out of open dresser drawers, the closet doors were open, and a small glass box on top of the dresser was open. Hodges asked LaMora what he was doing, and Officer LaMora replied that he was looking for drugs. Before leaving, Captain Hamilton

decided to look under the trailer, concerned that Lyles might be hiding there. Hodges said that the officers pulled the skirting away from the trailer to look underneath, but found no one. When the Lyles arrived home, they discovered the skirting had been torn away from their trailer and that several pieces of property were either damaged or missing.

The district court noted that the defendant officers presented a very different version of the facts. They each asserted that it was Hodges who requested assistance in executing the warrant at Lyles' residence. They asserted that when they arrived, Hodges told them that Lyles was inside the trailer refusing to answer the door, that the hood of Lyles' truck was warm, and that Hodges had seen movement inside the trailer and a light being turned off. Corporal Merrill said he also felt the warm hood and heard movement inside the trailer. The defendant officers stated that they entered the residence without causing damage, and none of them referred to any radio call to Chief LaMora requesting permission to enter forcibly. Officer LaMora said they removed the skirting to determine whether Lyles was hiding underneath the trailer, but Captain Hamilton's affidavit stated that the skirting was not removed or damaged.

The district court concluded that these factual discrepancies precluded it from determining whether the officers' actions were objectively reasonable in light of the facts known to them. The defendants now appeal, arguing that the uncontroverted evidence indicates an objectively reasonable basis for believing Lyles was in the trailer, and thus, their actions of entering the trailer to execute the arrest warrant were consistent with established law.

II.

We have jurisdiction to review immediately a denial of qualified immunity to the extent it turns on an issue of law. See Mitchell v. Forsyth, 472 U.S. 511, 525, 530 (1985); Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999). We may not

address the merits of the case or the sufficiency of the evidence in an interlocutory qualified immunity appeal. See Johnson v. Jones, 515 U.S. 304, 313 (1995); Mettler, 165 F.3d at 1202. The qualified immunity defense shields government officials from civil liability in circumstances where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although our review on appeal of the denial of qualified immunity is limited, "public officials are permitted to claim on appeal that their actions were objectively reasonable in light of their knowledge at the time of the incident." Mueller, 162 F.3d at 1002; see also Behrens v. Pelletier, 516 U.S. 299, 313 (1996). We review the district court's summary judgment order de novo, and we will affirm the denial of a qualified immunity claim if there exists a genuine issue of material fact concerning the officers' knowledge or if the moving party is not entitled to judgment as a matter of law. See Mueller, 162 F.3d at 1002.

A law enforcement officer is entitled to qualified immunity from suit for actions that are objectively reasonable in light of clearly established law and the facts known by the officer at the time of his actions. See Anderson v. Creighton, 483 U.S. 635, 641 (1987). It is clearly established Fourth Amendment law that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980) (emphasis added); accord, United States v. Risse, 83 F.3d 212, 215 (8th Cir. 1996). Once inside, the law enforcement authorities may then lawfully search anywhere in the house that the suspect might be found. See Maryland v. Buie, 494 U.S. 325, 330 (1990).

For purposes of summary judgment, there is no dispute that the law enforcement authorities were looking for Jesse Lyles at his residence in an attempt to execute a lawful arrest warrant. The dispute centers around whether the authorities had reason to believe that Jesse Lyles was within the residence. The defendants contend that the undisputed evidence demonstrates they had reason to believe that Lyles was inside.

5

They point to four supporting facts that they contend Lyles did not specifically contradict: (1) the neighbor's call to the police station to report that Lyles' vehicle was at his trailer, (2) Corporal Merrill and Captain Hamilton each personally felt the hood and stated it was warm indicating it had recently been driven, (3) Corporal Merrill stated he thought he heard movement in the trailer when he knocked at the door, and (4) "[a]nother officer" thought he saw a light go off inside the premises.

We conclude that these statements are sufficiently contradicted by the Lyles' evidence, and consequently, they do not independently create an objectively reasonable basis for believing that Jesse Lyles was inside the trailer. Although Lyles' truck was present and still warm, Hodges' statement that the neighbor told him a red car had recently left the residence casts doubt on the reasonableness of assuming Lyles was inside from the mere presence of his recently driven truck. Officer Hodges' statement that he never heard anything inside the trailer contradicts Corporal Merrill's statement that he heard movement inside. Finally, our review of the evidence reveals that no officer said he personally saw a light going off in the trailer. Rather, the defendants stated that Hodges said he saw a light go off, and Hodges denies making this statement.

Viewing the evidence in the light most favorable to the plaintiffs, the four pieces of evidence on which the law enforcement officers rely are in fact riddled with inconsistencies that can only be resolved through credibility determinations. Accordingly, we conclude that the district court correctly determined that material issues of fact exist concerning the officers' knowledge and the reasonableness of their actions in light of the facts, thus precluding a grant of summary judgment on the basis of qualified immunity.[3]

_____

[3]We note that in denying summary judgment to Chief LaMora, the district court first observed that a question of fact existed concerning whether or not Chief LaMora was contacted at all during this incident. This conclusion concerns the sufficiency of

## III.

Accordingly, we affirm the district court's denial of summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

the evidence or the plaintiffs' ability to prove their case, not the qualified immunity inquiry. Nevertheless, the district court continued, reasoning that even assuming Chief LaMora had been contacted during the search, he was not entitled to qualified immunity for the same reasons the court denied qualified immunity to the other defendant officers. Thus, to the extent this appeal attempts to challenge the district court's initial conclusion that a question of fact exists concerning whether Chief LaMora was ever contacted during the incident, we lack jurisdiction to address it in this interlocutory appeal. See Johnson, 515 U.S. at 313 (holding questions concerning the sufficiency of the evidence are not immediately appealable).